Anthony M. Barnes (Bar No. 199048)
Email: amb@atalawgroup.com
Kenya S. Rothstein (Bar No. 340854)
Email: ksr@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
8 Rio Vista Ave, Oakland
Oakland, CA 94611
Telephone: 917-371-8293

Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E. 2nd Street, Suite 250
Los Angeles, CA 90012
Phone: 310-394-6162

Attorneys for Plaintiff
LOS ANGELES WATERKEEPER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>SHIP & SHORE ENVIRONMENTAL, INC., a Nevada Corporation; ANOOSHEH MOSTAFAEI, individually and as a corporate officer,<br><br>Defendants. | Case No.: 2:23-cv-09202-AH-MARx<br><br>**CONSENT DECREE [48] [JS-6]** |

## CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendants SHIP & SHORE ENVIRONMENTAL, INC., ("Ship & Shore") and ANOOSHEH MOSTAFAEI ("Defendants") operate an industrial facility located at 2474 N. Palm Drive, Signal Hill, CA 90755, with Waste Discharger Identification Number ("WDID") 4 19I028525 (hereafter, the "Facility");

**WHEREAS,** the Facility's industrial activities consist primarily of the engineering and manufacturing of pollution abatement products and the Facility is categorized under Standard Industrial Classification ("SIC") Codes 3444 (establishments primarily engaged in manufacturing sheet metal work for buildings [not including fabrication work done by construction contractors at the place of construction], and manufacturing stovepipes, light tanks, and other products of sheet metal) and 3569 (General Industrial Machinery and Equipment, Not Elsewhere Classified);

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water

Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, Ship & Shore's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

WHEREAS, the General Permit requires all permittees, including Ship & Shore, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

WHEREAS, on August 31, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendants, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit;

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, on November 1, 2023, LA Waterkeeper filed a complaint against Defendants in the Central District of California ("Court"), Civil Case No. 2:23-cv-09202-KS ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendants' discharges of pollutants into storm drains and surface waters, including the Los Cerritos Channel, Alamitos Bay, San Pedro Bay, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendants (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. LA Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent

Decree, but only as to issues for which dispute resolution under Section IV has been initiated within the Term (as defined below) of this Consent Decree.

## I.    OBJECTIVES

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.   AGENCY REVIEW AND DEFINITIONS

### A.    AGENCY REVIEW OF CONSENT DECREE

8.     <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.     <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.  <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.  DEFINITIONS**

11.  Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a.  "BAT" means the Best Available Technology Economically Achievable.

b.  "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c.  "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.  "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.  "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.  "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

g.  "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.   "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater probability of occurrence within two business days as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Signal Hill, CA, USA."[2]

j.   "MIP" means a Monitoring Implementation Plan.

k.   "PPT" means Pollution Prevention Team.

l.   "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

m.   "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

n.   "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.   "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.   "SWPPP" means a Storm Water Pollution Prevention Plan.

q.   "Term" means the period between the Effective Date and the "Termination Date."

r.   "Termination Date" means the latest of:

i.   June 30 following three (3) years from the Effective Date;

ii.   June 30 following two (2) years after an advanced treatment system is fully installed, operational, and optimized, if ever;

iii.   Seven (7) days from the conclusion of any Dispute Resolution initiated pursuant to Section IV to enforce the

---

[2] Available at https://forecast.weather.gov/MapClick.php?lat=33.7971&lon=-118.1684.

1  |  Consent Decree initiated prior to the later of the dates in

2  |  Paragraphs 11.r.i and 11.r.ii above; or

3  |      iv.   Seven (7) days from the completion of all payments

4  |  required by this Consent Decree.

5  |      v.   Notwithstanding the foregoing, once Defendant satisfies the

6  |  requirements of and the Regional Board approves a Notice

7  |  of Termination pursuant to Section II.C of the General

8  |  Permit, and all accrued monetary obligations in this

9  |  Consent Decree have been met, the Termination Date of

10 |  this Consent Decree shall be the day upon which Defendant

11 |  provides written notification to LA Waterkeeper of the

12 |  Regional Board's approval.

13 |    s.   "Wet Season" means the period beginning October 1st of any

14 |  given calendar year and ending May 31st of the following

15 |  calendar year.

## III.  COMMITMENTS OF THE SETTLING PARTIES

### A.  STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12. <u>Non-Storm Water Discharge Prohibition.</u> Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13. <u>Current and Additional Best Management Practices.</u> At all times, Ship & Shore shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those (1) necessary to comply with BAT/BCT-level pollutant reductions; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water

1  quality standards" contained in a Statewide Water Quality Control Plan or the

2  applicable Regional Board's Basin Plan.

3      14.    <u>Rain Gauge/Sensor</u>. Ship & Shore shall install and maintain an

4  electronic rain gauge or sensor at the Facility within ten (10) days of the Effective

5  Date. The rain gauge/sensor shall be capable of measuring precipitation down to at

6  least 0.1 inches, and record start/stop times and non-cumulative precipitation for each

7  rain event. During the Term, Ship & Shore shall collect data using the gauge/sensor

8  for all precipitation events to the nearest 0.1 inch, including start/stop times. Data

9  from the rain gauge/sensor shall be conclusive of precipitation quantities and timing

10  for purposes of this Consent Decree, absent clear and convincing evidence of defect,

11  damage, and/or malfunction of the device causing misreadings.

12      15.    <u>Structural and Non-Structural BMPs for the Facility</u>. As soon as possible

13  but no later than forty-five (45) days of the Effective Date, unless otherwise noted

14  below, Ship & Shore shall develop and implement the following BMPs at the

15  Facility:

16          a.    Move the sampling point further back on the driveway (i.e.,

17              further away from North Palm Drive) to avoid run-on/flooding

18              onto the Facility driveway from North Palm Drive;

19          b.    Continue to employ and secure new filtration socks (biochar or

20              other equivalent media) to remove sediments, metals, and organic

21              materials in storm water discharged from the Facility, and

22              configure such wattles/filters/socks to achieve maximum contact

23              time with storm water prior to discharge, *i.e.,* in multiple layers

24              and/or overlapping formations. Ship & Shore shall, thereafter,

25              employ and secure new wattles/filters/socks in the same manner

26              annually prior to the start of the Wet Season, no later than

27              September 15th;

28

c.    During the Wet Season, repair or replace the socks when degraded or ineffective, including when there are rips, tears or other visual damage, and/or if sampling data demonstrating the socks are not sufficiently reducing pollutant concentrations;

d.    Continue to maintain and as needed replace gravel patches in areas of degraded pavement or asphalt on an ongoing basis during the Term;

e.    Undertake reasonable efforts to paint all parts, products, and machinery which feasibly can be painted throughout the Facility to prevent oxidation, and thereafter do so on an ongoing basis during the Term do so when the paint degrades;

f.    Continue to employ a third-party sweeping vendor to sweep along the fabrication bay, welding bay, painting area, and in between stored items before the Wet Season. Sweeping under the Paragraph shall include without limitation, activities necessary to prevent any metal shards or chips from being dispersed from work areas to uncovered paved areas;

g.    Remove and undertake reasonable measures to prevent the storage of unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the Facility;

h.    As required by the General Permit, provide cover for all trash cans and all scrap, refuse, debris, and recycling bins with lids, tarps, or other coverings sufficient to prevent exposure to rainfall, or place them under structural cover consistent with the definition of "Storm-Resistant Shelters" in the General Permit, to prevent the mobilization of pollutants;

i.    Maintain spill clean-up supplies at all fluid or chemical storage areas, chemical loading areas, and maintenance areas;

j.    Continue implementing an equipment and vehicle maintenance program that ensures:

    i.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, e.g., the forklift breaks down in a location that prevents ingress/egress;

    ii.    maintenance activities occur only in designated work areas or beneath covered maintenance areas;

    iii.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground; and

    iv.    Inspect and when necessary replace vehicle tires.

k.    Continue to implement pre-rain protocol throughout the Wet Season implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any socks or other filters deployed at the Facility, and to ensure coverage or removal of exposed industrial materials and relocation of uncontained or uncovered debris, as appropriate and feasible; and

l.    Within seven (7) business days of each of the BMPs above being implemented, Ship & Shore shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

## B.    SAMPLING AT THE FACILITY.

16.    Ship & Shore shall develop a monitoring program consistent with the General Permit. During the Term, Ship & Shore shall collect samples of storm water discharge from each sample point from at least four (4) Qualifying Storm Events,

including, at minimum, two (2) Qualifying Storm Events during the first half of the

Reporting Year and two (2) Qualifying Storm Events during the second half of the

Reporting Year.[3] Such sampling shall take place within the four (4) hour period

required by the General Permit § XI.B.5 with exceptions set forth in Section XI.C.6.

If Ship & Shore would have been required to collect samples during a rain event

pursuant to this Consent Decree had such rain event produced a discharge, but Ship &

Shore did not collect samples because such rain event did not produce a discharge,

then Ship & Shore shall document the inability to sample by taking representative

photographs during the rain event of each Discharge Point from which no discharge

occurred. Ship & Shore shall submit such photographs to LA Waterkeeper by email,

along with rain gauge/sensor data for the date of such rain event, within five (5)

business days of a written request for such records by LA Waterkeeper.

17.    Sampling Parameters. All samples collected pursuant to this Consent

Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should

Ship & Shore intend to conduct sampling for any additional parameters that are listed

in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without

limitation as a result of changed operations, a revised pollutant source assessment, or

a new mandate from a regulatory agency, such parameter shall be incorporated into

this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan

requirements (as defined below). Ship & Shore shall immediately notify LA

Waterkeeper of its intent to conduct sampling for any such additional parameters and,

if the parameter is not subject to an otherwise established limit, the Parties shall meet

and confer regarding the applicable Table 1 limit for such purposes within ten (10)

days of such notification.

18.    Laboratory and Holding Time. Except for pH samples, Ship & Shore

shall deliver all samples to a California-certified environmental laboratory for

---

[3] Ship and Shore will undertake reasonable efforts to sample the first such Qualifying Storm Event during
each half of the Reporting Year.

analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using appropriate equipment for pH used in accordance with the manufacturer's instructions.

19.    Detection Limit. Ship & Shore shall continue to request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

20.    Reporting. Ship & Shore shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies of the same to LA Waterkeeper within one (1) business day of such submission of the laboratory report with the results.

## C.    REDUCTION OF POLLUTANTS IN DISCHARGES

21.    Table 1 Numeric Benchmarks or Limits. Ship & Shore shall develop and implement BMPs for storm water discharges from the Facility intended to reduce pollutant concentrations to levels below those in Table 1.

### TABLE 1[4]

| Analytes | Values | Source |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous maximum) 100 mg/L (annual) | NAL |
| Total Iron | 1.0 mg/L (annual) | NAL |
| Total Aluminum | 0.75 mg/L (annual) | NAL |
| Nitrate + Nitrite Nitrogen (N+N) | 0.68 mg/L (annual) | NAL |
| Total Lead | 0.0558 mg/L (instantaneous maximum) | NEL |
| Total Copper | 0.0098 mg/L (instantaneous maximum) | NEL |

[4] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

| Analytes | Values | Source |
|---|---|---|
| Total Zinc | 0.0956 mg/L (instantaneous maximum) | NEL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous maximum) 15 mg/L (annual) | NAL |
| pH | 6.0 s.u. (instantaneous minimum) | NAL |
| pH | 9.0 s.u. (instantaneous maximum) | NAL |

22.    <u>Table 1 Exceedances</u>. Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples from the Facility within a reporting year exceeds the applicable annual value in Table 1; or where the concentration of any pollutant in any one (1) storm water sample from the Facility exceeds the applicable instantaneous value in Table 1.

23.    <u>Action Plan</u>. As of the Effective Date, and for the remainder of the Term, if Ship & Shore has an unauthorized non-storm water discharge in violation of Paragraph 12, or receives a storm water sample laboratory report that demonstrates an Exceedance as defined above (each a "Trigger Event"), Ship & Shore shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants at the Facility and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). The complete, omnibus Action Plan(s), if any are required, shall be submitted to LA Waterkeeper by January 31st of a given Reporting Year (for all Trigger Events that occurred during the first half of the Reporting Year, if any) and/or June 30th of a given Reporting Year (for all Trigger Events that occurred during the first half of the Reporting Year, if any).

a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge; (2) an

assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that shall be considered to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of selected BMPs, if any. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as reasonably practicable, which should not be later than ninety (90) days following the submission of the Action Plan absent reasonable justification, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) business days of each of the BMPs set forth in the Action Plan being implemented, Ship & Shore shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b.    <u>Action Plan Proposed BMPs.</u> The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i.    <u>Hydrologic Controls.</u> Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.   <u>Sweeping.</u> The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.  <u>Treatment Systems.</u> Installing additional components or systems, or otherwise improving, an advanced storm water

treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

    iv.    <u>Evaluation of Existing BMPs</u>.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon receipt of Ship & Shore's complete Action Plan to provide Ship & Shore with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Ship & Shore shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. BMPs implemented via Action Plan(s) developed pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing unrelated BMPs set forth in the Action Plan.

d.    If required by the Permit, Ship & Shore shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28.b.i below.

e.  <u>Action Plan Payments</u>[5]. Defendants shall pay Two Thousand Dollars ($2,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E. 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

**D.  VISUAL OBSERVATIONS**

24.  <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff or representatives of Ship & Shore shall continue to conduct visual observations during the Facility's operating hours during QSEs and the rain events identified in Section 16. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit with exceptions set forth in Section XI.C.6.

25.  <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Ship & Shore shall conduct monthly non-storm water visual observations at the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit with exceptions set forth in Section XI.C.6. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used

---

[5]  Due to Ship & Shore's claims of continuing business interruptions and supply chain issues beginning with the pandemic and effecting Ship & Shore's core business, the Parties have agreed to a reduced value Action Plan payment, should one be required, given the unique challenges and circumstances of the case.

only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

26.    Visual Observations Records. Ship & Shore shall maintain observation records, including photographs, to document compliance with Paragraphs 24 and 25. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Ship & Shore shall provide LA Waterkeeper with a copy of those records within seven (7) business days of receipt of a written request from LA Waterkeeper for those records.

27.    Employee Training Program. Within thirty (30) days of the Effective Date, Ship & Shore shall ensure that its employee training program meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

        a.    Materials. Training materials should include, at minimum, those required by the General Permit, including drawings and diagrams where appropriate, for reference and use by Ship & Shore's personnel to ensure effective implementation of all BMPs at the Facility;

b. <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Ship & Shore shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c. <u>Training Frequency</u>. Training shall be provided or overseen by a QISP or equivalent professional familiar with the requirements of this Consent Decree and the General Permit, and shall be performed annually to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. <u>Sampling Training</u>. Ship & Shore shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. <u>Visual Observation Training</u>. Ship & Shore shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. <u>Non-Storm Water Discharge Training</u>. Ship & Shore shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g.   <u>Employees</u>. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program prior to assuming responsibilities associated with SWPPP compliance; and

h.   <u>Records</u>. Ship & Shore shall maintain training records to document compliance with this Paragraph pursuant to General Permit Section XXI.J and shall provide LA Waterkeeper with a copy of these records within seven (7) business days of receipt of a written request.

28.   <u>SWPPP Revisions</u>.

a.   <u>Initial SWPPP Revisions</u>. Ship & Shore shall amend the Facility's SWPPP to incorporate the relevant requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i.   A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's industrial storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.   A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.    Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.    A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

v.    A MIP as required by sections XI and X.I of the General Permit;

vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.    A Training Program as described above in Paragraph 27.

b.    <u>Additional SWPPP Revisions</u>.

i.    Within sixty (60) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), if required by the Permit, Ship & Shore shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.    If the SWPPP has been modified during that the first or second half of the Reporting Year, by January 31st and June 30th, Ship & Shore shall submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c.   <u>Review of SWPPP</u>.  For any SWPPP updates pursuant to Paragraphs 28.a. and 28.b., LA Waterkeeper shall have thirty (30) days upon receipt of Ship & Shore's complete SWPPP to provide Ship & Shore with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Ship & Shore shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. Ship & Shore shall reasonably consider such comments for potential incorporation into the SWPPP while prioritizing compliance with submission deadlines required by the General Permit.[6]  The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Ship & Shore shall upload the revised SWPPP to SMARTS.

**E.     COMPLIANCE MONITORING AND REPORTING**

29.     LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendants' compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Ship & Shore shall not unreasonably deny, one

---

[6] Regardless of the time allocated for LA Waterkeeper review and comment, Ship & Shore will upload the SWPPP to SMARTS in a timely manner, provided that uploading to SMARTS shall not be a justification in as to why a change requested by LA Waterkeeper is not incorporated.

additional Site Inspection. Any Site Inspection shall occur during normal business

hours, and LA Waterkeeper will provide Ship & Shore with at least five (5) business

days' notice prior to a Dry Weather Site Inspection, and forty-eight (48) hours' notice

for a Wet Weather Site Inspection. For any Site Inspection requested to occur in wet

weather, Plaintiff shall be entitled to request to adjust timing or reschedule during

normal business hours in the event the forecast changes and anticipated precipitation

appears unlikely, and thus frustrates the purpose of visiting the Facility in wet

weather. Such adjustment requests shall not be unreasonably made or unreasonably

denied. Notice will be provided by electronic mail to the individual(s) designated

below at Paragraph 58. During the Wet Weather inspection, Plaintiff may request that

Ship & Shore collect a sample of industrial storm water discharge from the Facility's

designated industrial discharge point(s) referenced in its SWPPP, to the extent that a

QSE is occurring. Ship & Shore shall collect the sample and provide a split sample to

LA Waterkeeper, so long as such does not interfere with the integrity of the sample,

provided LA Waterkeeper provides its own sample container that complies with 40

CFR § 136.3, and LA Waterkeeper provides a copy of the resulting data to the

Defendant within the same established timeframe Plaintiff is expected to share its

own resulting data. LA Waterkeeper's representative(s) may observe the split

sample(s) being collected by Ship & Shore's representative. LA Waterkeeper shall be

permitted to take photographs or video recording during any Site Inspection, provided

copies of the same are produced to Ship & Shore with three (3) business days after

the inspection.

    30.   <u>Document Provision</u>. During the Term, Ship & Shore shall notify and

submit documents to LA Waterkeeper as follows:

           a.    Ship & Shore shall copy LA Waterkeeper, by email to the

individual(s) designated below at Paragraph 58, on all General

Permit compliance documents, monitoring and/or sampling data,

written communications and/or correspondences, or any

1  documents related to the General Permit that are submitted to the

2  Regional Board, the State Board, and/or any state or local agency,

3  county or municipality.

4      b.    Within five (5) business days of receipt by Ship & Shore , send to

5  LA Waterkeeper, by email to the individual(s) designated below at

6  Paragraph 58, any General Permit compliance document, General

7  Permit inspection report, written communication and/or

8  correspondence, or any document related to the General Permit

9  received by Defendants from the Regional Board, the State Board,

10  and/or any state or local agency, county, or municipality.

11      31.   Compliance Monitoring. Ship & Shore shall partially defray costs

12  associated with Plaintiff's monitoring of Ship & Shore's compliance with this

13  Consent Decree during the Term by paying Six Thousand Dollars ($6,000.00). [7]

14  Payment shall be made within ten (10) days of the Entry Date. The payment shall be

15  made via check, made payable to: "Los Angeles Waterkeeper" via certified mail,

16  return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd

17  Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required

18  under this Paragraph will constitute breach of the Consent Decree.

19  **F.**    **ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND**

20  **COSTS, MISSED DEADLINES, AND INTEREST**

21      32.   Stay and Logistics of Payments. Within five (5) days of the Parties'

22  mutual execution of this Consent Decree, the Parties will stipulate to stay this action

23  for all purposes pending the entry of this Consent Decree. As to the payments

24  required by Paragraphs 31, 33, and 34, Ship & Shore shall cause the total amount

25  payable to be deposited in the Newmeyer & Dillion LLP client trust account within

26

27      [7] Due to Ship & Shore's claims of business interruptions and supply chain issues beginning with the
pandemic and effecting Ship & Shore's core business, the Parties have agreed to a reduced value Compliance

28  Monitoring payment and a reduced monitoring payment, given the unique challenges and circumstances of
the case.

sixty (60) days of the Effective Date of this Consent Decree. The funds will be held in trust pending the entry of this Consent Decree, and will thereafter be paid as elsewhere provided herein.

33.    Environmentally Beneficial Project. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waters tributary to The Los Cerritos Channel, Alamitos Bay, and/or San Pedro Bay, Ship & Shore shall cause a payment totaling Fifteen Thousand Dollars ($15,000.00)[8] to be made to SBCC, as fiscal sponsor for Roots of Unity NAC (Neighborhood Action Council),[9] made within ten (10) days of the Entry Date, payable to the SBCC and sent via mail to SBCC, 540 N. Marine Ave., Wilmington, CA 90744. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    LA Waterkeeper's Fees and Costs. Ship & Shore shall cause to be paid a total of Forty-Nine Thousand Dollars ($49,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within ten (10) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to 8 Rio Vista Ave, Oakland, CA 94611. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

35.    Missed Deadlines. In the event that Ship & Shore fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, and if such failure is not rectified within 15 (fifteen) days, Ship &

---

[8] Due to Ship & Shore's claims of business interruptions and supply chain issues beginning with the pandemic and effecting Ship & Shore's core business, the Parties have agreed to a reduced value Supplemental Environmental Project payment and a reduced monitoring payment, given the unique challenges and circumstances of the case.

[9] Please reference Root of Unity NAC in the memo field of the check.

Shore shall pay a stipulated payment of Five Hundred Dollars ($500) per month. Such stipulated payments shall be made by check payable to SBCC, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via mail to SBCC, 540 N. Marine Ave., Wilmington, CA 90744. Ship & Shore agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

36.    Interest on Late Payments. Ship & Shore shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting five (5) business days after Waterkeeper gives Ship & Shore written notice that the payment is due and shall be computed at a rate equal to the lower of: (i) 10% per year (0.833% per month); or (ii) the federal funds rate in effect as of the first of the month when interest begins to accrue pursuant to this paragraph. Interest shall continue to accrue daily on any outstanding balance until Defendants are current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Any interest obligation is deemed satisfied if Ship & Shore's interest payment is within $50 of the then-accrued amount. Interest on late payments shall be paid by check payable to: SBCC and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via mail to SBCC, 540 N. Marine Ave., Wilmington, CA 90744.

## IV.    DISPUTE RESOLUTION

37.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38. <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

39. <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 38, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40. <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendants, their officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree, to the fullest extent that any of the foregoing were or could have been asserted based on the facts alleged in the Complaint and/or the 60-Day Notice Letter. This Consent Decree is a final, binding, and continuing judgment for the duration of its Term. The Consent Decree has maximum res judicata effect as to any and all claims that were or could have been

raised in the 60-Day Notice Letter and/or the Complaint. Nothing in this Consent Decree waives the rights of the United States to enforce its rights under Federal Law.

41.    <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint.

42.    <u>Waiver of Civil Code Section 1542</u>. Plaintiff and Defendants are aware that they may have claims of which they have no present knowledge or suspicion and which will be released via this Consent Decree. Plaintiff and Defendants take these possible claims into account in entering into this Consent Decree, and agree that this Consent Decree is intended to be a full and final release of such claims. Plaintiff and Defendants hereby irrevocably and forever waive all rights they each may have arising under California Civil Code § 1542 (or any analogous requirement of law), with respect to the foregoing releases. The Parties understand that Section 1542 provides that:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

Plaintiff and Defendants, being aware of California Civil Code § 1542, agree to expressly waive any rights they may have thereunder, as well as under any other statute or common law principles of similar effect. Plaintiff and Defendants further

1  acknowledge that the effect and import of the provisions of California Civil Code §
2  1542 have been explained to them by their own counsel.

3      43.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's
4  rights to address or take any position that it deems necessary or appropriate in an
5  informal or formal proceeding before the State Board, Regional Board, EPA, or any
6  other judicial or administrative body on any matter relating to Ship & Shore's '
7  compliance at the Facility with the General Permit or the Clean Water Act occurring
8  or arising after the Effective Date.

9  **VI.    MISCELLANEOUS PROVISIONS**

10     44.    No Admission of Liability. The Parties enter into this Consent Decree
11 for the purpose of avoiding prolonged and costly litigation. Neither the Consent
12 Decree nor any payment pursuant to the Consent Decree shall constitute or be
13 construed as a finding, adjudication, or acknowledgement of any fact, law or liability,
14 nor shall it be construed as an admission of violation of any law, rule, or regulation.
15 Defendants maintain and reserve all defenses it may have to any alleged violations
16 that may be raised in the future.

17     45.    Counterparts. This Consent Decree may be executed in any number of
18 counterparts, all of which together shall constitute one original document.  Telecopy
19 and/or facsimile copies of original signature shall be deemed to be originally
20 executed counterparts of this Consent Decree.

21     46.    Authority. The undersigned representatives for Plaintiff and Defendants
22 each certify that s/he is fully authorized by the Party whom s/he represents to enter
23 into this Consent Decree. A Party's signature to this Consent Decree transmitted by
24 facsimile or electronic mail shall be deemed binding.

25     47.    Construction. The language in all parts of this Consent Decree shall be
26 construed according to its plain and ordinary meaning, except as to those terms
27 defined in the Permit, the Clean Water Act, or specifically herein. The captions and
28

paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

48.    Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

49.    Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

50.    Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected, except for the release provisions.

51.    Choice of Law. The laws of the United States shall govern this Consent Decree.

52.    Diligence. Ship & Shore shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

53.    Effect of Consent Decree. Compliance with this Consent Decree does not by itself constitute compliance with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

54.    Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

55.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to

modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, shall be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified, if feasible. Modification requests as to issues that arise on shorter notice shall be made at the first reasonable opportunity. Such requests shall not be unreasonably made or unreasonably denied.

56.   <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree and other generally applicable law, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment <u>affecting the Consent Decree or compliance therewith</u>.

57.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

58.    <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendants: |
|---|---|
| Los Angeles Waterkeeper | Ship & Shore Environmental, Inc.; |
| Erina Kwon | Anoosheh Mostafaei |
| Benjamin Harris | 2474 North Palm Drive |
| Madeleine Siegel | Signal Hill, CA 90755 |
| 360 E. 2nd St., Suite 250 | Email: ssin@shipandshore.com |
| Los Angeles, CA 90012 | Email: dsay@shipandshore.com |
| Email: erina@lawaterkeeper.org | Phone: (562) 997-0233 |
| Email: ben@lawaterkeeper.org | |
| Email: madeleine@lawaterkeeper.org | |
| Phone: 310-394-6162 | |
| | |
| With copies to: | With copies to: |
| Aqua Terra Law Group LLP | Jason Moberly Caruso |
| Anthony M. Barnes | Newmeyer & Dillion LLP |
| 8 Rio Vista Ave. | 895 Dove Street, 2nd Floor |
| Oakland CA, 94611 | Newport Beach, CA 92660 |
| Email: amb@atalawgroup.com | Email: Jason.Caruso@ndlf.com |
| Phone: 917-371-8293 | Phone: 949-271-7388 |

Any deadline to respond to notifications of communications shall be extended by three (3) days after the date that they are postmarked and sent by first-class mail. Any change of address or addresses shall be communicated in the manner described above for giving notices.

59.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that

1   it is acceptable to the Federal Agencies or the Court. If the Parties are unable to

2   modify this Consent Decree in a mutually acceptable manner that is also acceptable

3   to the Court, this Consent Decree shall immediately be null and void as well as

4   inadmissible as a settlement communication under Federal Rule of Evidence 408 and

5   California Evidence Code section 1152.

6
      The Parties hereto enter into this Consent Decree and submit it to the Court for
7
    its approval and entry as a final judgment.
8

9       IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

10  as of the date first set forth below.

11
    APPROVED AS TO CONTENT
12

13  Dated:   February 12    , 2025       By: _____

14                                            Bruce Reznik

15                                            Executive Director
                                              Los Angeles Waterkeeper
16

17  Dated:   3/14/2025    , 2025       By: _____
                                            Anoosheh Oskonian
18                                          Anoosheh Mostafaei
                                            Ship & Shore Environmental Inc.
19                                          President & CEO

20  Dated:   3/14/2025    , 2025       By: _____
                                            Anoosheh Oskonian
21                                          Anoosheh Mostafaei, individually
22                                          and in all capacities

23

24

25

26

27

28

5884.101 / 16131892.1                   33
                              CONSENT DECREE

APPROVED AS TO FORM

AQUA TERRA AERIS LAW GROUP

Dated: _____February 12_____, 2025

By _____
　　　Anthony M. Barnes
　　　Attorney for Plaintiff
　　　Los Angeles Waterkeeper

NEWMEYER & DILLION LLP

Dated: _____March 20_____, 2025

By: _____
　　　John E. Van Vlear
　　　Jason Moberly Caruso
　　　Attorney for Defendants
　　　Ship & Shore Environmental, Inc.;
　　　Anoosheh Mostafaei

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

　　　Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendants.

Dated: _MAY 21, 2025_

CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE ANNE HWANG
United States District Judge